## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FARMINGTON VILLAGE DENTAL ASSOCIATES, LLC | ) | |
| | ) | |
| Plaintiff | ) | CASE No.:  3:20-CV-01647-VAB |
| | ) | |
| V. | ) | |
| | ) | |
| CINCINNATI INSURANCE COMPANY | ) | |
| | ) | |
| Defendant | ) | DECEMBER 18 2020 |

## DEFENDANT THE CINCINNATI INSURANCE COMPANY'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, The Cincinnati Insurance Company ("Cincinnati"), hereby submits this Memorandum of Law in Support of its Motion to Dismiss.

## Introduction

Plaintiff seeks property insurance coverage for financial losses it sustained in conjunction with the Coronavirus pandemic. But, Plaintiff's allegations establish that it has not sustained any losses attributable to direct physical loss or damage to property, as required for any coverage under the Policy's plain language. There are no factual allegations to show that government orders or the virus effected any physical change to Plaintiff's property or premises. Instead, Plaintiff alleges that it sustained financial losses when it suspended or limited dental procedures in response to government orders in Connecticut and public health concerns.

The Policy supplies property insurance coverage, not financial loss coverage in the absence of direct physical loss or damage to property. The Policy is a contract designed to indemnify loss or damage to property, such as in the case of a fire or storm. Coronavirus does not damage property;

1

it hurts people. On the issue presented, the controlling law is clear: to survive Cincinnati's Motion to Dismiss, there must at a minimum be factual allegations showing direct physical loss or damage to property. However, there are none here. Instead, Plaintiff's Complaint relies on a series of legal conclusions, summary allegations unsupported by facts, and allegations that directly contradict the plain language of the Policy and the Orders. Such allegations are insufficient to state a plausible claim for relief. As such, Plaintiff's Complaint should be dismissed.

## FACTUAL BACKGROUND

### I.    Allegations Of The Complaint

The Complaint includes the following allegations:

- Plaintiff is a dental practice located in Farmington, Connecticut. (Compl. at ¶ 2).

- Plaintiff purchased a property insurance policy from Cincinnati. The insured premises under the policy is 320 Main Street, Farmington, Connecticut. (Compl. at ¶¶ 3, 14, 17).

- COVID-19 is a physical substance that can cause deadly illness. COVID-19 is contagious and communicable through droplets in the air and on surfaces. (Compl. at ¶¶ 2, 28, 29, 35-39).

- Since it is likely that the Insured Property was contaminated, the Plaintiff took corrective measures to repair the physical loss, including, without limitation, continuous cleaning and erection of barriers to inhibit the spread of the virus in order to minimize the suspension of operations. (Compl. at ¶¶ 45, 46, 47, 52).

- COVID-19 is capable of being transmitted by a number of methods, including by way of human contact with surfaces and items of physical property, as well as through airborne particles. (Compl. at ¶¶ 36, 38, 40, 41).

- The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property. (Compl. at ¶¶ 42-47).

- On March 10, 2020, the Governor of Connecticut (the "Governor") issued a Declaration of Civil Preparedness and Public Emergencies in response to COVID-19. On March 20, 2020, the Governor entered an order directing all residents in Connecticut to stay at home, imposing social distancing rules and limiting building

occupancies. On September 20, 2020, the Governor extended Connecticut's State of Emergency in response to the COVID-19 pandemic until February 9, 2021. (Compl. at ¶¶ 53, 54, 56).

- The COVID-19 pandemic, CDC guidance, American Dental Association guidance, Connecticut State Dental Association guidance, Governor's Executive Orders, and lack of PPE equipment combined to effectively cause the suspension of ordinary business operations. (Compl. at ¶¶ 62, 63).

- SARS-CoV-2 and the COVID-19 pandemic caused direct "physical loss" and/or "physical damage" to Plaintiff's Covered Property, requiring suspension of operations at the Covered Property. Losses caused by SARS-CoV-2 and the COVID-19 pandemic triggered the Business Income provision of Plaintiff's Cincinnati policy. During the COVID-19 pandemic, the Plaintiff incurred Extra expense at the Covered Property. (Compl. at ¶ 49, 83).

The Complaint contains three counts. Plaintiff's counts sound in Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, and in violations of the Connecticut Unfair Trade Practices Act.

## II.     The Plaintiff's Policy

### A.      The Insurance Policy At Issue

Cincinnati issued Policy No. ECP 047 90 05 to Farmington Village Dental Associates LLC for the policy period March 22, 2018 through March 22, 2021. (Compl. at ¶ 14). A certified copy of the Policy is attached as **Exhibit A** and an uncertified copy is appended to Plaintiff's Complaint. Plaintiff is a Connecticut Corporation with its principal place of business in Farmington, Connecticut. (Compl. at ¶ 10).

The pertinent forms in the Policy are form FM 101 05 16 (Building and Personal Property Coverage Form) and form FA 213 05 16 (Business Income (and Extra Expense) Coverage Form). The Building and Personal Property Coverage Form (Form FM 101 05 16) is the main property coverage form. Form FA 213 05 16 supplies Business Income coverage. Both forms include

Business Income, Extra Expense, Extended Business Income, Civil Authority, and so-called Sue and Labor coverage, but only if the necessary elements for coverage are satisfied.[1]

### B.  The Direct Physical Loss Requirement

The requirement of "direct physical loss" to property is a core element in property insurance policies like Plaintiff's. The requirement appears in multiple places in the Policy. For example, direct physical loss to the Plaintiff's property is required for Business Income coverage:

> We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss.

(Policy at Form FM 101 05 16 at page 18 of 40).  "Loss" is defined, in relevant part, as ***physical*** loss or ***physical*** damage. (Policy at Form FM 101 05 16 at page 38 of 40).

Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Policy at form FM 101 05 16 at page 5 of 40). Accordingly, there is no Covered Cause of Loss, and therefore no property coverage, unless the insured first establishes that there is direct physical loss or damage to covered property. A Covered Cause of Loss, and thus direct physical loss or damage to property, is an express requirement for *any* coverage under the Policy. Furthermore, while the definition of Covered Cause of Loss refers to exclusions, exclusions do not come into play unless there is first direct physical loss. *See, e.g.*, *City of Burlington v. Indem. Ins. Co. of N. Am*., 332 F.3d 38, 43–44 (2d Cir. 2003). Under governing law,

---

[1] The so-called Sue and Labor coverage is not a separate coverage. Instead, it is a provision that appears in the section of the Policy titled "Duties in the Event of Loss or Damage." The provision imposes a duty on the insured to prevent further damage to the extent reasonably possible in the event of a Covered Cause of Loss. (FM 101 05 16, pp. 30-31 of 40). The so-called Sue and Labor coverage expressly provides: "[I]n no event will we pay for any subsequent 'loss' resulting from a cause of loss that is not a Covered Cause of Loss." (FM 101 05 16, p. 31 of 40). For the reasons discussed in this brief, there is no Covered Cause of Loss here. Thus, there is no so-called Sue and Labor coverage.

insureds have the burden to establish that their claim is one that is covered by the terms of the policy. *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 765 (2d Cir. 2002). If there is no direct physical loss or damage to property, there is no coverage in the first instance. Thus, the exclusions need not be consulted. Courts throughout the country hold this well-established rule of law extends to preclude coverage where, as here, Plaintiff fails to allege facts demonstrating that the existence of the virus or the related government orders caused direct physical loss or damage to property.

## C.   Additional Requirements For Coverage Under The Policy

The Civil Authority coverage also requires, among other things, direct physical loss or damage to property other than the insured's property. Additionally, the civil authorities must issue orders prohibiting access to the insured's property as a result of such loss or damage. (*See* Policy at Form FM 101 05 16, page 19 of 40).[2] Likewise, the Ingress and Egress coverage only applies if the insured sustains actual loss of business income or extra expense "caused by the prevention of existing ingress or egress at [an insured premises] due to direct 'loss' by a  Covered Cause of Loss at a location contiguous to such 'premises'." (See FA 213 05 16, p. 4 of 9). Accordingly, this additional coverage requires both direct physical loss or damage at a location contiguous to Plaintiff's premises, and the prevention of access to Plaintiff's premises as a result of that direct physical loss to property.

---

[2] There are other requirements for the Policy's Civil Authority coverage that Cincinnati does not rely on for this Motion. However, Cincinnati does not waive the right to raise those requirements at a later time.

5

## ARGUMENT

### I.  Motion To Dismiss Standard

Dismissal is an appropriate mechanism here because this Motion presents a pure question of law and contract interpretation. A motion to dismiss for failure to state a claim should prevail if, after the complaint's *factual* allegations are taken as true and all reasonable inferences are made in favor of the nonmoving party, the nonmoving party cannot prove facts supporting its claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Importantly, legal conclusions and other unsupported conclusions stated in the complaint may not be considered in determining a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Insurance policy construction is a question of law properly answered by the court. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 773 (2013).

Additionally, the court should consider the Policy appended to the Complaint and the Orders referenced in the Complaint when ruling on this Motion. *United States v. Strock*, No. 19-4331, 2020 WL 7062274, at *7 (2d Cir. Dec. 3, 2020). The Policy and the Orders are integral to the Complaint. The Policy is attached to the Complaint and the Orders are matters of public record. The Court may also consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if they are central to the plaintiff's claim and their authenticity is not challenged. So too, the Court may take judicial notice of public records without converting the motion to a motion for summary judgment. *See id.*

Where the Complaint's allegations conflict with the terms of the Policy and the Orders, the Policy and the Orders control.  *See, e.g.*, 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 & n. 22 (4th ed.) (Wright & Miller) ("It appears to be well settled

that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit.").

## II.     There Is No Direct Physical Loss Or Damage And Therefore No Coverage

### A.     The Plain And Unambiguous Language Of The Policy Requires Direct *Physical* Loss Or Damage To Property

Under Connecticut law, proper insurance contract interpretation requires the Court to read the contract as a whole, consider all relevant portions together and give operative effect to every provision. *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 373 (2008). The courts construe insurance contracts in accordance with the terms and intent of the parties as expressed in the policy language. *Id.* Terms are interpreted according to their "natural and ordinary meaning." *Id.* "Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement; contracts voluntarily and fairly made should be held valid and enforced in the courts." *Robert Lawrence Assocs., Inc. v. Del Vecchio*, 178 Conn. 1, 22 (1979)

The expectations of an insured cannot control over the unambiguous language of the policy. *See, e.g., New London Cty. Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 755, 36 A.3d 224, 236 (2012) ("In support of this limited construction, the defendants rely on several principles, namely, that insurance policy exclusions should be read narrowly; . . . that insurance policies should be construed in favor of the insured; . . . and that policy language must be interpreted so as to reflect the understanding of an ordinary policyholder. . . . The foregoing cases establish that these principles of insurance law, although sound, *apply only when a policy is ambiguous*.") (Citations omitted; emphasis added). The court is barred from rewriting unambiguous contractual terms. *See id.* Further, the fact that a dispute has arisen regarding the insurance policy's proper interpretation

does not render the contract language ambiguous. *Wentland v. Am. Equity Ins. Co.*, 267 Conn. 592, 600 (2004).

Plaintiff's Complaint acknowledges that direct physical loss or physical damage to property is required for coverage under the Policy. (*See* Compl. at ¶¶ 19, 66.) This requirement is plainly stated throughout the Policy, and these words are not ambiguous. As such, the Policy must be applied as written. Plaintiff does not allege any facts establishing a distinct, demonstrable, physical alteration of property at its premises. There is no Connecticut decision holding that the presence of a virus constitutes direct physical loss to property. However, an avalanche of decisions, including rulings from both state and federal courts throughout the country, support Cincinnati's position.

**B.      Plaintiff's Allegations Show The Virus And The Orders Do Not Cause Physical Loss Or Damage To Property**

Connecticut, like most jurisdictions, construes direct physical loss or damage to require an actual alteration or change in property.  *See, e.g.*, *Capstone Bldg. Corp. v. Am. Motorists Ins. Co*., 308 Conn. 760, 782 (2013); *England v. Amica Mut. Ins. Co.*, No. 3:16-CV-1951 (MPS), 2017 WL 3996394, at *7–8 (D. Conn. Sept. 11, 2017) (attached as **Exhibit C**). The Second Circuit Court of Appeals also requires an alteration or change and does not afford coverage for intangible economic losses. *See City of Burlington v. Indemnity Ins. Co. of N. Am.*, 332 F.3d 38, 44 (2d Cir. 2003); *see also Lissauer v. Fireman's Fund Ins. Companies*, 459 F. App'x 67, 68 (2d Cir. 2012) ("Even assuming that [the insured] suffered the loss of an intangible [investment] 'account,' [the insured] cannot demonstrate that the account suffered a 'direct physical loss,' as required for coverage under the policy. *See* 10A Couch on Insurance § 148:46 (3d ed.2011).").

In *England*, which this Court has favorably cited in prior holdings[3], Judge Shea assessed whether the Complaint alleged direct physical loss or damage to property as a matter of law and held as follows:

> Connecticut case law reflects a similar understanding of the difference between a loss and its cause. Specifically, courts interpreting insurance policies to determine the scope of insurance coverage have distinguished between loss or damage, on the one hand, and processes that could—but have yet to—cause loss or damage, on the other, ruling that the latter do not fall within the scope of coverage where the policies require physical loss or damage to trigger coverage. ***In Capstone Building Corp. v. American Motorists Insurance Company, the Connecticut Supreme Court held that "the escape of carbon monoxide, without more, is not property damage," and therefore did not constitute "physical injury to tangible property, including all resulting loss of use of that property" as required to trigger coverage under a commercial general liability policy.*** *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 782 (2013) (alteration omitted). . . . ***In line with the Connecticut Supreme Court's reasoning, other courts have interpreted the term "direct physical loss or damage" to "strongly impl[y] that there was an initial satisfactory state that was changed into an unsatisfactory state.***" *City of Burlington v. Indemnity Ins. Co. of N. Am.*, 332 F.3d 38, 44 (2d Cir. 2003) (collecting cases interpreting Louisiana, Virginia, Washington, and Texas law for the purpose of interpreting Vermont law) (internal quotations and alterations omitted). Using this interpretation, the Second Circuit reasoned that "while the failure of a defective part qualifies as direct physical loss or damage, the defect itself, assuming the item has not yet failed, does not." *Id.* ***All of this confirms that, to the extent she is seeking coverage for a chemical reaction alone as a "direct physical loss," Ms. England's claim fails.*** While the resultant cracking within Ms. England's walls likely qualifies as "direct physical loss to the Property," and "loss" as used in the Policies embraces the financial consequences thereof (although losses from cracking are excluded from coverage by other provisions), ***the chemical reaction itself, absent any physical manifestation in the Property marking a change to an unsatisfactory state, is not a "direct physical loss" or other "loss" under the Policy.***

*England*, 2017 WL 3996394 at *7-8 (emphasis added); *see also Best Friends Pet Care, Inc. v. Design Learned, Inc.*, 77 Conn. App. 167, 182–83 (2003) ("By the same lights that we have concluded that the term property insurance includes tangible personal property, we find no

---

[3] *See, e.g., Hurlburt v. Massachusetts Homeland Ins. Co.*, 310 F. Supp. 3d 333, 343 (D. Conn. 2018).

indication that it is meant to include intangible property such as reimbursement for loss of use. . . . We find no indication that the term property insurance was intended to encompass intangibles; to the contrary, the contract language refers specifically to 'physical loss.'").

Moreover, this Court has expressly rejected the proposition that a defective condition is a direct physical loss where there is no physical damage or alteration to property. *See Hurlburt v. Massachusetts Homeland Ins. Co.*, 310 F. Supp. 3d 333, 343 (D. Conn. 2018); *see also Markland v. Homesite Ins. Co*., No. CV166010323S, 2018 WL 1734719, at *8 (Conn. Super. Ct. Mar. 6, 2018) ("[t]he proposition that the chemical reaction [taking place in a home's concrete foundation] itself constitutes the 'physical loss to property' covered in Section I is one several Connecticut federal district courts have recently rejected in crumbling concrete cases"), *citing England v. Amica Mutual Ins. Co.,* Docket No. 3:16CV1951, 2017 WL 3996394 (D. Conn. Sept. 11, 2017); *Zamichiei v. CSAA Fire & Casualty Ins. Co.*, United States District Court, Docket No. 3:16CV739 (VAB) (D.Conn. February 20, 2018); *Mazzarella v. Amica Mutual Ins. Co*., United States District Court, Docket No. 3:17CV598 (SRU) (D. Conn. February 8, 2018); *Chernosky v. Amica Mutual Ins. Co.*, United States District Court, Docket No. 3:17CV01047 (VLB) (D. Conn. January 24, 2018); *Makufka v. CSAA Fire & Casualty Ins. Co.*, United States District Court, Docket No. 3:16CV00567 (VLB) (D. Conn. January 18, 2018); *Liston–Smith v. CSAA Fire & Casualty Ins. Co.*, United States District Court, Docket No. 3:16CV510 (JCH) (D. Conn. December 15, 2017); *Agosti v. Merrimack Mutual Fire Ins. Co.*, United States District Court, Docket No. 3:16CV01686 (SRU) (D.Conn. August 28, 2017).

Similarly, Second Circuit authority holds that a defective condition and/or economic loss, standing alone, is not direct physical loss as a matter of law.  *See City of Burlington v. Indem. Ins.*

*Co. of N. Am.*, 332 F.3d 38, 43–44 (2d Cir. 2003). The Second Circuit has construed the phrase

"direct physical loss or damage" and found that courts:

> have held that "[t]he language 'physical loss or damage' strongly implies that there
> was an initial satisfactory state that was changed . . . into an unsatisfactory state." .
> . . Under this definition, while the failure of a defective part qualifies as direct
> physical loss or damage, the defect itself, assuming the item has not yet failed, does
> not. We are aware of no cases adopting a contrary interpretation of the term "direct
> physical loss or damage" and consider it extremely likely that Vermont courts
> would interpret the term as it appears in the Policies in conformity with these other
> courts. Applying this definition to the undisputed facts of this case, we conclude
> that coverage under the Policies extended only to the thirty-three leaks that occurred
> during the Policies' coverage period and not to the costs of repairing the defective
> welds that had not yet failed.

*City of Burlington*, 332 F.3d 38 at 44 (citations omitted).

Here, Plaintiff does not allege facts demonstrating that the virus (or the Orders) caused any

physical alteration to its property. The Complaint does not include any factual allegations that the

virus was in fact present on surfaces in the Plaintiff's premises. Furthermore, even if the virus was

present on Plaintiff's premises, Plaintiff conflates the presence of the virus with a direct physical

loss. The Plaintiff's Complaint suggests that the Coronavirus holds a physical presence that may

be present for a short while until cleaned away or otherwise eradicated as a matter of time. (*See*

Compl. at ¶¶ 49, 52). Plaintiff also indicates that the Policy's direct physical loss requirement is

satisfied whenever a business suffers economic harm. This is contrary to Connecticut authority

and a host of other cases, discussed below, holding that direct physical loss requires actual,

tangible, permanent, physical alteration of property, as discussed below.

### C.     Connecticut Authority Is To The Same Effect As The Prevailing Law Nationally

Connecticut authority is consistent with the prevailing law nationally. *See, e.g.*, 10A *Couch*

*on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that

term, **is widely held** to exclude alleged losses that are intangible or incorporeal and, thereby, to

11

preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (Emphasis added). Indeed, the requirement of tangible change in property has been applied in multiple, recent, directly applicable decisions.

The vast majority of Coronavirus coverage decisions issued to date support Cincinnati. First, recent decisions specifically addressing Cincinnati policies hold that the Coronavirus and related orders do ***not*** cause actual, tangible, structural loss or damage to property. *Catlin Dental, P.A. v. The Cincinnati Indemnity Company*, No. 20-CA-004555 (20th Cir. Fl. Dec. 11, 2020) (attached as **Exhibit D**); *Promotional Headwear International v. The Cincinnati Insurance Company*, 2020 WL 7078735 (D. Kan. Dec. 3. 2020) (attached as **Exhibit E**); *4431, Inc., et al. v Cincinnati Insurance Companies, et al.*, 2020 WL 7075318 (E.D. Pa. December 3, 2020) (attached as **Exhibit F**); *T&E Chicago LLC v. The Cincinnati Insurance Company*, 2020 WL 6801845 (N.D. Ill. Nov. 19, 2020) (attached as **Exhibit G**); *Uncork and Create LLC v. The Cincinnati Insurance Company, et al.*, 2020 WL 6436948 (S.D. W.V. November 2, 2020) (attached as **Exhibit H**); *Vandelay Hospitality Group LP v. The Cincinnati Ins. Co.*, No 3:20-cv-1348-D, ECF Doc. # 41 (N.D. Tex. Oct. 7, 2020) (attached as **Exhibit I**); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2020 WL 5820552 (S.D. Iowa Sept. 29, 2020) (attached as **Exhibit J**); *Sandy Point Dental, P.C. v. The Cincinnati Insurance Company*, Case No. 20CV2160, 2020 WL 5630465 (N.D. Ill., September 21, 2020) (attached as **Exhibit K**).

The foregoing holdings are consistent with the national consensus of authority holding that Coronavirus and related orders do not constitute direct physical loss or damage to property as a matter of law. *See, e.g.*, *10012 Holdings, Inc. d/b/a Guy Hepner v. Sentinel Insurance Company*, No. Case 1:20-cv-04471-LGS (S.D.N.Y. December 15, 2020) (attached as **Exhibit L**); *Michael*

*Cetta, Inc., et al. v. Admiral Indemnity Company*, No. 1:20-cv-04612-JPC (S.D.N.Y. Dec. 11, 2020) (attached as **Exhibit M**); *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London, et al.*, 2020 WL 7251643 (S.D. Fl. Dec. 9, 2020) (attached as **Exhibit N**); *Kessler Dental Associates, P.C. v. The Dentists Insurance Company,* Case No. 2:20-cv-03376-JDW (E.D. Pa. Dec. 7, 2020) (attached as **Exhibit O**); *Palmer Holdings and Investments, Inc., et al. v. Integrity Insurance Company, et al.*, 2020 WL 7258857 (S.D. Ia. Dec. 7, 2020) (attached as **Exhibit P**); *El Novillo Restaurant, et al. v. Certain Underwriters at Lloyd's London, et al.*, Case No.: 1:20-cv-21525-UU (S.D. Fl. Dec. 7, 2020) (attached as **Exhibit Q**); *Sultan Hajer d/b/a Rug Outlet v. Ohio Sec. Ins. Co.*, 2020 WL 7211636, at *4 (E.D. Tex. Dec. 7, 2020) (attached as **Exhibit R**); *Zwillo V. Corp. v. Lexington Ins. Co.*, 2020 WL 7137110 (W.D. Mo. Dec. 2, 2020) (attached as **Exhibit S**); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2020 WL 7024287 (E.D. Pa. Nov. 30, 2020) (attached as **Exhibit T**); *Whiskey River on Vintage, Inc. v. Illinois Casualty Company*, 2020 WL 7258575 (S.D. Ia. Nov. 30, 2020) (attached as **Exhibit U**); *Selane Products, Inc. v. Continental Casualty Company*, 2020 WL 7253378 (C.D. Ca. Nov. 24, 2020) (attached as **Exhibit V**); *Water Sports Kauai, Inc. v. Fireman's Fund Insurance Company, et al.*, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) (attached as **Exhibit W**); *Real Hospitality, LLC d/b/a Ed's Burger Joint v. Travelers Casualty Insurance Company of America*, 2020 WL 6503405 (S.D. Miss. November 4, 2020) (attached as **Exhibit X**); *Raymond H Nahmad DDS PA, et al. v. Hartford Casualty Insurance Company*, 2020 WL 6392841 (S.D. Fl. November 1, 2020) (attached as **Exhibit Y**); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 2020 WL 6440037 (C.D. Cal. Oct. 27, 2020) (attached as **Exhibit Z**); *Hillcrest Optical, Inc. v. Continental Casualty Company*, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020) (attached ash **Exhibit AA**); *Henry's Louisiana Grill, Inc. v. Allied Insurance Co. of Am.*, 2020 WL 5938755, at *5 (N.D. Ga.

Oct. 6, 2020) (attached as **Exhibit BB**); *Mark's Engine Company No. 28 Restaurant, LLC v. The Travelers Indemnity Co. of Conn., et al.*, 2020 WL 5938689 (C.D. Cal. Oct. 2, 2020) (attached as **Exhibit CC**); *Its Nice Inc v. State Farm Fire and Casualty Co*., No. 2020L000547 (Ill. Du Page County, September 29, 2020) (attached as **Exhibit DD**); *Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London*, 2020 WL 5791583 (M.D. Fla. Sept. 28, 2020) (attached as **Exhibit EE**); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 5525171 (N.D. Cal. Sept. 14, 2020) (attached as **Exhibit FF**); *Pappy's Barber Shops, Inc. et al. v. Farmers Group, Inc. et al.*, 2020 WL 5500221 (S.D. Cal. Sept. 11, 2020) (attached as **Exhibit GG**); *10E, LLC v. Travelers Indem, Co. of Conn*., 2020 WL 5359653 (C.D. Cal. Sept. 2, 2020) (attached as **Exhibit HH**); *Diesel Barbershop, LLC. v. State Farm Lloyds*, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) (attached as **Exhibit II**); *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y. May 20, 2020) (attached as **Exhibit JJ**); *Rose's 1, LLC v. Erie Ins. Exchange*, 2020 WL 4589206 (Aug. 6, 2020, Super. Ct., D.C.) (attached as **Exhibit KK**); *The Inns by the Sea v. Cal. Mut. Ins. Co.*, No. 20-cv-1274 (Aug. 6, 2020 CA) (attached as **Exhibit LL**); *Gavrilides Mgm't Co., LLC v. Michigan Ins. Co*., 2020 WL 4561979 (Jul. 21, 2020, Ingram County, MI) (attached as **Exhibit MM**); *cf Studio 417, Inc., et al. v. The Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) (decided under Missouri law, distinguishable and wrongly decided for multiple reasons).

On December 3, 2020, the United States District Court for the District of Kansas issued its memorandum and order in *Promotional Headwear v. Cincinnati Insurance Company*, 2020 WL 7078735 (December 3, 2020), granting Cincinnati's motion to dismiss. *Promotional Headwear*, like the other cases cited, arose from alleged loss of business income as a result of public health advisories and orders issued in response to the Covid-19 pandemic. Plaintiff, a distributor of

promotional apparel and hats, lost sales and eventually suspended its operations as a result of the risks to employees and advisories concerning the risk of loss, and, like the Plaintiffs in this matter, sought to recover its losses from Cincinnati. *Id.* at*1-2. The distributor argued that "direct physical loss" had occurred, because viral particles could have been present at its premises; alternately, it asserted that the "value" of its business had been "damaged" by the pandemic, and accordingly, that loss of value and utility satisfied the "direct loss" requirement.

The *Promotional Headwear* Court rejected both of these rationales, reasoning that "[t]he presence of the words 'direct' and 'physical' limit the words 'loss' and 'damage' and unambiguously require that the loss be directly tied to a material alteration to the property itself …" *Id.* at *7. Further, the Court rejected the argument that direct physical loss had occurred because of the possibility of viral contamination of the premises, as a matter of law, holding that "[t]o accept [such a] conclusory assertion would be to accept the proposition that any business located in a community with COVID-19 infections was likely contaminated with the virus." *Id.* at *8. As in *Promotional Headwear*, Plaintiff in this action will argue the possibility of viral particles on its premises turns the existence of a pandemic into "damage to property." This proposition has no support in law, science, or logic. Moreover, there are no allegations in the Complaint that the virus was actually present on the Plaintiff's property, nor is there any admissible evidence supporting such a conclusion.

In *SA Palm Beach*, the United States District Court for the Southern District of Florida recently rejected analogous claims for business income and civil authority coverage. In so holding, the court expressly rejected the insured's arguments that its conclusory allegations concerning "forced physical alternations during a period of restoration" triggered coverage, holding:

> Here, just like in *Malaube* and *Nahman*, the Business Income and Extra Expense Coverage sections require "direct physical loss of or damage to property." D.E. 24-

1, p. 60. Each section also contemplates a "period of restoration," which, like in Malaube, uses the words "repair" and "replace" in its definition. In the Amended Complaint, *Plaintiff alleges only that it has "suffered a direct physical loss of [its] property because [it has] been unable to use [its] property for its intended purpose," and that Plaintiff "suffered a direct physical loss to the property in the form of diminished value, lost business income, and forced physical alterations during a period of restoration.*" D.E. 22 ¶¶ 44, 45. *But the Amended Complaint falls short of alleging that Plaintiff's property sustained any physical damage.* The Court thus finds that Plaintiff's allegations are insufficient as a matter of law to establish coverage under the Business Income or Extra Expense Coverage sections.

2020 WL 7251643, at *5 (Emphasis added). Similarly, in the pending case, Plaintiff's allegations fall short and the Motion to Dismiss must be granted.

The Southern District of Mississippi in *Real Hospitality, LLC d/b/a Ed's Burger Joint v. Travelers Casualty Insurance Company of America* also ruled against an insured requesting business interruption insurance related to the Coronavirus. The court analyzed the commercial property policy as a whole, and stated that it made "logical sense" that the insured property itself, "*i.e.*, the building and/or personal property in or on the building, must first be lost or damaged before Business Income coverage kicks in." (Emphasis in original.) 2020 WL 6503405 at *6. The court held the *Real Hospitality* plaintiff failed to state a covered claim as a matter of law because it did not allege that any property was damaged, or that plaintiff was permanently disposed of any property. *Id*. The court held: "[T]his is a commercial property policy, not a stand-alone business interruption policy – Plaintiff's operations are not what is insured – the building and the personal property in or on the building are." *Id.* at *8. Similarly, here, it is Plaintiff's building and not its operations that are insured under the Cincinnati Policy.

In *Raymond H Nahmad DDS PA, supra*, the Southern District of Florida rejected arguments that mirror Plaintiff's contentions in this case, holding

Plaintiffs contend that the Motion should be denied because "[l]osses stemming from the COVID-19 Pandemic are without factual or legal precedent," and a "fact-specific inquiry into these issues is especially critical here, especially because

insurance policy decisions are not binding where the policy forms and underlying facts differ." . . . In their view, the "parties have barely scratched the surface of dense factual issues relevant to this coverage determination" and thus "an order concluding that coverage is barred as a matter of law is premature at the pleading stage." . . . ***The Court disagrees. As Defendant correctly notes, Plaintiffs "do not identify a single factual issue that needs to be developed. The reason is simple: there are none." . . . Numerous other courts across the country have dismissed substantially similar COVID-19-related lawsuits at this stage for failing to plead actionable claims under the insurance policy***.

*Raymond H Nahmad DDS P.A., et al.*, 2020 WL 6392841 at *5 (citations omitted; emphasis added). The court held that economic losses caused by virus-related business closures or suspensions do not constitute a "direct physical loss" or "physical harm" as a matter of law and dismissed plaintiff's complaint. *Id.* at*8-*9, *11.

The holdings in *Promotional Headwear, SA Palm Beach*, *Real Hospitality* and *Nahmad* are consistent with the heavy majority of decisions addressing coverage for Coronavirus induced business losses, including *Uncork and Create*, *supra*. The *Uncork* court granted Cincinnati's motion to dismiss an analogous claim and held that an inquiry regarding whether the virus is actually on the premises is irrelevant. *Uncork and Create LLC*, 2020 WL 6436948. Because the structure can be cleaned, the court held that the presence of the virus does not result in a direct physical loss:

> [E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property. Because routine cleaning, perhaps performed with greater frequency and care, eliminates the virus on surfaces, there would be nothing for an insurer to cover, and a covered "loss" is required to invoke the additional coverage for loss of business income under the Policy.

*Id.* at *5. Furthermore, the court found that the plaintiff's property was not physically damaged or rendered unusable or uninhabitable because the pandemic impacts human health and human behavior, not physical structures. *Id.* ("No repairs or remediation to the premises are necessary for

17

its safe occupation in the event the virus is controlled and no longer poses a threat. In short, the pandemic impacts human health and human behavior, not physical structures.").

The Southern District of Alabama analyzed the meaning of "direct physical loss" in the Coronavirus context in *Hillcrest Optical*, *supra*. There, the court found that the law "has required some tangible alteration or disturbance to property to demonstrate physicality in most contexts." *Hillcrest Optical*, 2020 WL 6163142, at *6. The court further cited to the leading insurance law treatise, *Couch on Insurance*, noting "the insurance treatise upon which Alabama courts frequently rely in insurance coverage disputes indicates a direct physical loss requires a tangible injury to property." *Id.* at *7. The court ultimately rejected the insured's argument that its inability to use its property as a result of the government orders limiting its dental operations constituted a "direct physical loss."  In reaching this conclusion, the court held:

> Plaintiff's loss of usability did not result from an immediate occurrence which tangibly altered its property – the Order did not immediately cause some sort of tangible alteration to Plaintiff's office. Rather, Plaintiff was only temporarily precluded from performing routine medical procedures while the Order was in effect.

*Id.*  The court recognized as persuasive numerous recent opinions that also concluded "that absent allegations of some tangible alteration to property, litigants have suffered no direct physical loss of property in other business interruption disputes arising consequent to COVID-19 closure orders." *Id.* (citing *Malaube, LLC v. Greenwich Ins. Co.,* No. 20-22615-CIV, 2020 WL 5051581 at *8 (S.D. Fla. Aug. 26, 2020)*; Infinity Exhibits,* 2020 WL 5791583, at *4 (M.D. Fla. 2020); *Pappy's Barber Shops, Inc. v. Farmers Group, Inc*., 2020 WL 5500221, at *4 (S.D. Cal. 2020); *Henry's Louisiana Grill,* 2020 WL 5938755, *4 (N.D. Ga. 2020).[4]

---

[4] Indeed, several courts have recognized that extending the breadth of coverage to any scenario where an insured's business operations have been artificially limited would be untenable. *See, e.g., Henry's La. Grill*, 2020 WL 5938755, at *4 (insured's argument for loss of use coverage is too far reaching); *see also Hillcrest Optical, Inc.*, 2020 WL 6163142 at *7 ("Under Plaintiff's

The district court for the Southern District of Iowa also granted Cincinnati's motion to dismiss a substantially similar complaint to the one here. *Oral Surgeons, P.C.*, 2020 WL 5820552, at *1. The insured dental office was required to temporarily cease performing elective dental procedures as part of the State's efforts to slow the spread of the Coronavirus. It asserted a claim for coverage for lost business income under a policy containing the same pertinent language as the Policy here. *Oral Surgeons* dismisses its complaint because the plain language of the policy, as well as the authorities Cincinnati relied on in that case, show that the policy insures only against physical loss or damage to property—not purely economic loss.

> Recent [c]ases cited by Cincinnati have held that virus-related closures of business do not amount to direct loss to property covered by the Cincinnati policy of insurance. The few contrary cases cited by [Oral Surgeons] are distinguishable on their facts ***and not as well analyzed as the many authorities cited by Cincinnati***.

*Id.* at *1 (emphasis added). Cincinnati relies on the same authorities here, plus some additional newer authorities to the same effect as *Oral Surgeons*.

Similarly, the U.S. District Court for the Northern District of Illinois ruled that Coronavirus-related closures do not result in "direct physical loss" under a Cincinnati policy. *Sandy Point Dental, P.C.*, 2020 WL 5630465. In *Sandy Point*, the court pointed out that the words "direct" and "physical" modify the word "loss", and thus, they "ordinarily connote actual, demonstrable harm" to the premises. *Id.* at *2. The *Sandy Point* court found that:

> Plaintiff has not pled any facts showing physical alteration or structural degradation of the property. Nothing about the property has been altered since March 2020. Plaintiff need not make any repairs or change any part of the building to continue its business.

---

interpretation, possession carries the same meaning as usability; therefore, loss of possession is equivalent to the inability to use something. However, not every instance of possession leads to use. For instance, a person can possess a car but be unable to use it due to gas rationing ordered by the government.").

*Id.* The reasoning of *Sandy Point* directly applies to the pending matter. Plaintiff is unable to show any direct physical loss, and thus, there is no coverage. *Infinity Exhibits, Inc.*, 2020 WL 5791583, also dismisses the insured's complaint, with prejudice. It holds there is no business income or civil authority coverage because the complaint "fails to allege facts describing how the Property suffered any actual physical loss or damage," and that *any amendment would be futile*. *Id. Infinity* applies the holding in *Mama Jo's* to the analogous facts and favorably cites the decisions discussed in this brief:

> Significantly, Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage. . . . [A]lthough the Court is sympathetic to Plaintiff and all insureds that experienced economic losses associated with COVID-19, there is simply no coverage under the policies if they require "direct physical loss of or damage" to property.

*Infinity*, 2020 WL 5791583 at *4-5. As in all these cases, the plain and unambiguous language of the Plaintiff's Policy requires direct *physical* loss or damage *to property*. However, that is not what happened here. On this fundamental issue, this case cannot be distinguished from any of the authorities requiring actual, tangible, permanent, physical alteration of property.

Moreover, when viewed through the lens of common sense and basic tenets of property insurance coverage, Plaintiff's construction becomes unworkable because it bears no logical end. Again, courts throughout the country agree:

> Ultimately, the Court finds that Plan Check's interpretation is not a reasonable one because it would be a sweeping expansion of insurance coverage without any manageable bounds. . . . [C]onsider the following scenarios: (1) a city changes its maximum occupancy codes to lower the caps, meaning that a particular restaurant can no longer seat as many customers as it used to; (2) a city amends an ordinance requiring restaurants located in residential zones to cease operations between 1:00 a.m. and 5:30 a.m. to expand the window to 12:00 a.m. to 6:00 a.m.; (3) a city issues a mandatory evacuation order to all of its residents due to nearby wildfires (a consequence of this is that all businesses must suspend operations), but lifts the

> order three weeks later when the wildfires are extinguished without, fortunately, any destruction of property. Under Plan Check's standard, all of these instances would trigger insurance coverage. While Plan Check may believe that that is an appropriate result, the Court is not persuaded. . . . It offers no way, and the Court does not see any way, to limit this coverage. Though parties could in theory contract away coverage, this is not practicable for all-risk policies where everything is covered unless expressly excluded. The list of losses that do not fit within the parties' expectations of what property insurance should cover would be a very, very long one.

*Plan Check*, 2020 WL 5742712 at *6 & n.6. *Accord*, *Henry's*, 2020 WL 5938755 at *5; *Hillcrest*, 2020 WL 6163142, at *7. Further, *Plan Check* observes:

> [t]he manageability issue is not limited to government action, but with anything that interferes with the permitted physical activities on a property. If a building's elevator system had a software bug that temporarily shut down all the elevators, that would clearly interfere with permitted physical activities. Similarly, a snowstorm would interfere with a restaurant's outdoor dining service. And yet Plan Check's interpretation would cover all of these scenarios.

*Plan Check*, 2020 WL 5742712 at *6. As *Plan Check*, *Henry's*, and *Hillcrest* show, Plaintiff's proposed construction of the Policy to cover its purely financial losses is contrary to the Policy language, unworkable, and untenable. Thus, this Court should grant Cincinnati's Motion.

To the same effect is *Mama Jo's*, which is relied upon in a number of the foregoing cases, including *Promotional Headwear, Infinity* and *Nahmad.* It holds that there must be a physical change in property in order for there to be a direct physical loss. *See Mama Jo's Inc. v. Sparta Ins. Co*., 2020 WL 4782369, *8 (11th Cir. Aug. 18, 2020) (attached as **Exhibit NN**). In *Mama Jo's*, the insured alleged that dust and debris from a nearby road construction project caused customers to avoid its restaurant, leading to a loss of business income. However, the insured was unable to identify any actual physical change to its property. Rather, it sought cleaning and painting costs.

*Mama Jo's* holds that the term direct physical loss ". . . ***is widely held*** to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a

distinct, demonstrable, physical alteration of the property." *Mama Jo's*, 2020 WL 4782369 at *8.

(Emphasis added). *Mama Jo's* also finds that "an item or structure that merely needs to be cleaned

has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* ("'[d]irect' and 'physical'

modify loss and impose the requirement that the damage be actual.'"). *Mama Jo's* holding is

consistent with the laws of other states throughout the country. *Id.*, *citing Universal Image Prods.,

Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012); *MRI Healthcare Ctr. of Glendale, Inc.

v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779, 115 Cal. Rptr. 3d 27, 37 (2010) ("A direct

physical loss contemplates an actual change in insured property."); *AFLAC Inc. v. Chubb & Sons,

Inc.* (2003) 260 Ga. App. 306, 581 S.E.2d 317, 319 (same); *see also Mastellone v. Lightning Rod

Mut. Ins. Co.*, 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶ 68 (8th Dist.) (mold on

insured's wood siding did not cause physical loss or damage because it could be removed by

cleaning without causing any harm to the wood: "Absent any specific alteration of the siding, the

Mastellones failed to show that their house suffered any direct physical injury as required by the

homeowners' policy.").[5]

---

[5] It is also undisputed that the virus can be removed by cleaning. Indeed, The Centers for Disease Control and Prevention (CDC) instructs that the Coronavirus can be wiped off surfaces by cleaning: "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020) (attached as **Exhibit B**; *See also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed August 18, 2020). This Court may take judicial notice of the CDC reports and other matters of public record without converting Cincinnati's motion to dismiss to a motion for summary judgment. *See, e.g., Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) ("Although this case partially arises on a motion to dismiss, we may properly take judicial notice of this [FDA] document (without converting Acorda's motion to dismiss into a motion for summary judgment) because the [FDA] Guidance is publicly available and its accuracy cannot reasonably be questioned.").

**D.     Construing The Policy Language As A Whole Further Confirms That
        "Physical" Loss Or Damage Requires A Demonstrable Alteration Of The
        Property**

Under Connecticut law, the policy must be read as a whole with each phrase read in context

with the other provisions. *See Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co*., 274 Conn.

457, 463 (2005). Other provisions of the Policy confirm that physical alteration to property is

required to implicate coverage. For example, the Business Income and Extra Expense coverage is

limited by to the "Period of Restoration." (*See* Form FM 101 05 16 at pages 18-19 of 40). The

"Period of Restoration" ends on the earlier of: (1) the date when the property at the "premises"

should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) the date

when business is resumed at a new permanent location. (*See* Form FM 101 05 16 at pages 38-39

of 40).  The repair or replace reference contemplates an actual, concrete, change in property. As

courts throughout the country have found, there is nothing to "repair" or replace" if there is no

concrete, actual change in the property. *See Accord*, *West Coast Hotel*, *Hillcrest*, *Henry's*, *Infinity*,

*Sandy Point*, *Mudpie*, *infra.* The requirement of a "Period of Restoration" confirms that the Policy

only provides coverage if there is physical alteration to property. There is no physical alteration

alleged or proven here. Therefore, there is no coverage. *Mudpie, Inc.*, 2020 WL 5525171 at *4

("The words '"[r]ebuild," "repair" and "replace" all strongly suggest that the damage contemplated

by the Policy is physical in nature.' *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d

280, 287 (S.D.N.Y. 2005)."); *see also Toppers*, 2020 WL 7024287 at *4 (E.D. Pa. Nov. 30, 2020)

("The parties' agreement to measure the period of restoration against the time it takes to repair the

premises indicates that they intended the Policy to cover losses for physical damage, and that intent

controls the Court's interpretation of the Policy.").

### E.     The Absence Of A Virus Exclusion Is Irrelevant Because There Is No Direct Physical Loss

Plaintiff claims that coverage exists because the Policy does not contain a virus exclusion. That assertion is legally incorrect. An exclusion can become relevant only if Plaintiff first meets its burden of showing that there is direct physical loss. *See, e.g.*, *City of Burlington*, 332 F.3d at 43–44. Indeed, courts throughout the country appropriately recognize that the presence or absence of a virus exclusion is irrelevant where, as here, the insured cannot meet its initial burden to show that the virus and related Orders cause direct physical loss or damage to property.

For example, the policies in *Real Hospitality*, *Handel, Nahmad*, *West Coast Hotel*, *Henry's*, *10E, LLC*, *Pappy's, Diesel*, *Malaube* and *Gavrilides* **did** contain virus exclusions. But, *10E, LLC*, *Pappy's,* and *Malaube* never reached the virus exclusion question because the respective insureds failed to meet their initial burden to allege direct physical loss or damage to property. *See, e.g.*, *10E, LLC*, 2020 WL 5359653 at *4; *Pappy's Barber Shops,* 2020 WL 5500221 at *3 ("[b]efore even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the policy terms."). *Real Hospitality*, *Handel*, *Nahmad*, *West Coast Hotel,* and *Diesel* likewise dismiss the insureds' complaints for failure to show direct physical loss, identifying the policies' virus exclusions as a secondary, alternative basis for their holding.

Conversely, the policies in many cases, including *Promotional Headwear, Infinity, Sandy Point, Pappy's, Plan Check, Selane, SA Palm Beach, Water Sports Kauai, Zwillo, Guy Hepner, Oral Surgeons, Uncork, Vandelay, Mudpie, Inn's by the Sea*, *Rose's 1*, and *Social Life Magazine* **did not** contain virus exclusions. Those cases nevertheless dismiss the plaintiffs' respective complaints because they fail to allege facts showing direct physical loss to property in the first instance. *See, e.g., Rose's 1, LLC*, 2020 WL 4589206 at *5. As all of these cases show, the absence

of a virus exclusion in the Policy is irrelevant where, as here, there is no coverage in the first instance.

## III.    There Is No Civil Authority Coverage

As established, the Civil Authority coverage requires direct physical loss or damage to property other than Plaintiff's property. And, that physical loss or damage must cause a civil authority to issue an order prohibiting access to the Plaintiff's premises. But, Plaintiff does not allege any facts to show any of these things occurred here. Just as the virus is not causing direct physical loss or damage to Plaintiff's premises, it is not causing direct physical loss or damage to other property. Likewise, the virus and the Orders are not prohibiting access to Plaintiff's premises. Even then, there is only Civil Authority coverage if, among other things, the action of the civil authority prohibits access to the insured premises. (Policy at Form FM 101 05 16, page 19 of 40).

> [L]osses due to curfew and other such restrictions are not generally recoverable.* * * If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable.

11A *Couch on Ins.* § 167:15. It is undisputed that access was never prohibited.

### A.    There Is No Direct Physical Loss Or Damage To Other Property

Cincinnati has demonstrated that direct physical loss to property other than the Plaintiff's property is necessary. Courts nationwide have upheld that requirement. *See, e.g., United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006); *see also Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, 8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.,* 2011 WL 13214381, 6 (E.D. Tex. Mar. 30, 2011); *S. Texas Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, 10 (S.D. Tex. Feb. 15, 2008). Just as the

Coronavirus is not causing direct physical loss or damage to the Plaintiff's property, it is not causing direct physical loss or damage to other property. The Complaint fails to identify any distinct, demonstrable, physical damage to property, anywhere. Rather, it alleges the Orders have required Plaintiff to suspend or reduce its operations. (Compl. at ¶ 7). No facts are alleged that demonstrate that this happened because of direct physical loss to anybody's property.

There are no alleged facts asserting any direct physical loss or damage to property. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus or the Orders.

B.     **The Requisite Prohibition Of Access Is Lacking**

The Civil Authority coverage also requires that access to Plaintiff's premises be prohibited by an order of civil authority. But, the Plaintiff does not allege the Orders prohibited access to its premises. Nor could it. The Complaint alleges the Orders merely suspended or reduced dental procedures. (Compl. at ¶ 7). There are no facts included that support the allegation that access to Plaintiff's premises was prohibited. In fact, the Orders permitted Plaintiff's employees and patients to continue to access the premises.  Because there was no prohibition of access, there is no Civil Authority coverage.

As is clearly stated in the Policy and established by the law nationally, there is no Civil Authority coverage when the government order keeps people confined to their homes. *See Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (holding that curfew to prevent rioting did not prohibit access to insured's movie theater); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 614 (D.C. 1970) (holding that, although curfew because of riots prevented restaurant's customers from accessing restaurant, curfew did not prohibit access to premises).  Furthermore, access to premises must be prohibited, not just limited. *See, e.g.*, *Schultz*

*Furriers, Inc. v Travelers Cas. Ins. Co. of Am.*, 2015 WL 13547667, at *6 (N.J. Super. L. July 24, 2015) (holding that serious traffic issues following Superstorm Sandy did not trigger civil authority coverage because it was not completely impossible for the public to access the insured store); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010) (holding that bridge repair that hindered or dissuaded the majority of customers from visiting a ski resort did not constitute prohibition of access to the premises). Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply. *See Southern Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004) (access to hotels was not prohibited by FAA order grounding flights in response to 9/11 attacks); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970) (same); *Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of America*, 2015 WL 13547667, 6 (N.J. Super. L. July 24, 2015) (despite serious traffic issues in lower Manhattan following Superstorm Sandy, it was not completely impossible for the public to access the insured store); *Goldstein v Trumbull Ins. Co*., 2016 WL 1324197, 12 (N.Y. Sup. Ct. Apr. 05, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co*., 2005 WL 1331700, 4 (Minn. Ct. App. June 7, 2005).

Again, these well-reasoned decisions are equally applicable to claims like Plaintiff's. Indeed, courts have unequivocally rejected claims just like Plaintiff's claim here. *See, e.g.*, *10E, LLC*, 2020 WL 5359653 at *5 (no business income, extra expense, or civil authority coverage where government orders required restaurant to temporarily cease in-person dining services). Likewise, in *Pappy's*, COVID-19 related orders temporarily prevented the insured from operating its barbershop. *Pappy's* correctly finds the orders did not prohibit access to the premises, as required for civil authority coverage:

> [T]he complaint does not allege that any COVID-19 Civil Authority Orders prohibited Plaintiffs *from access* to their business premises. Rather, it only alleges

that Plaintiffs were prohibited *from operating* their businesses at their premises. Plaintiffs fail to make any distinction between their place of business (i.e., the physical premises where they operate their business), and the business itself, but this distinction is relevant to coverage under the Policy. The Policy insures property, in this case Plaintiffs' property and physical places of business, and not Plaintiff's business itself. To that end, the civil authority coverage provision only provides coverage to the extent that access to Plaintiff's physical premises is prohibited, and not if Plaintiff's are simply prohibited from operating their business. The government orders alleged in the complaint prohibit the operation of Plaintiff's business; they do not prohibit access to Plaintiffs' place of business.

*Pappy's Barber Shops*, 2020 WL 5500221 at *6 (Emphasis added). Because the Complaint's allegations establish access was not prohibited, the Civil Authority coverage does not apply.

## IV.  There Is No Ingress and Egress Coverage

The Ingress and Egress coverage requires both a direct physical loss at a location contiguous to the insured's property, and the prevention of access to the insured's property as a result of that direct physical loss. (See FA 213 05 16, p. 4 of 9.) As Cincinnati has demonstrated, the Complaint does not allege any facts that show direct physical loss at any location, let alone at a location contiguous to Plaintiff's premises. Further, because the Complaint's allegations establish that access to Plaintiff's premises was not prevented, the Ingress and Egress coverage does not apply.

## V.  The Plaintiff's Extra-Contractual Claims Fail As A Matter Of Law

Since Plaintiff cannot assert a viable breach of contract claim, Plaintiff does not have an actionable extra-contractual claim for bad faith or unfair insurance practices.  *See, e.g.,  Hurlburt v. Massachusetts Homeland Ins. Co*., 310 F. Supp. 3d 333, 345 (D. Conn. 2018) (dismissing extra-contractual claims; holding "Connecticut law requires a breach of contract in order to plead bad faith"; standing since the insureds "have failed to plead a plausible breach of contract claim, no CUTPA or CUIPA claim can follow); *see also Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*,

308 Conn. 760, 67 A.3d 961, 988 (2013) (concluding that "bad faith is not actionable apart from a wrongful denial of a benefit under [an insurance] policy.").

Moreover, the Court should not accept bare assertions, nor conjure facts which are neither pled nor asserted by Plaintiff. In order to prove a bad faith claim under Connecticut law, Plaintiff must demonstrate that the Defendant engaged in conduct that was designed to deceive or mislead or that the Defendant neglected or refused to fulfill a duty or contractual obligation *and* such failure was *not* the result of an honest mistake as to one's rights or duties. *See Chapman v. Norfolk & Dedham Mutual Fire Ins. Co.*, 39 Conn. App. 306, 320, *cert. denied*, 235 Conn. 925 (1995); *see also Buckman v. People Exp., Inc.*, 205 Conn. 166, 171 (1987); *Hutchinson v. Family Farm Casualty Insurance Company*, 273 Conn. 33, 42 n.4 (2005). In Connecticut, bad faith is *not just bad judgment or negligence*; instead, it implies the *conscious doing of a wrong* because of a *dishonest purpose* or *moral obliquity*, and it contemplates a state of mind affirmatively operating with furtive design or ill will. *Id.* Moreover, a plaintiff cannot recover for bad faith if the insurer denies a claim that is "fairly debatable," i.e., if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim. *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005), *adhered to on reconsideration sub nom.*, 2005 WL 8165602 (D. Conn. Sept. 29, 2005). With respect to the alleged unfair insurance practices, Connecticut statutory authority and case law is clear that, to establish a claim for violations of CUTPA and CUIPA, the "claimant must allege and prove facts sufficient to show that the insurer was [c]ommitting or performing [certain specified acts] with such frequency as to indicate a general business practice." *Heyman Associates No. 1 v. Ins. Co. of State of Pa.*, 231 Conn. 756, 796 (1995); *see also Mead v. Burns*, 199 Conn. 651, 663-64 (1986). The Plaintiff fails to set forth any facts establishing the

required elements of a bad faith or unfair insurance practices claim. Thus, Cincinnati moves the Court to grant the Motion to Dismiss.

## CONCLUSION

As echoed by the court in *Real Hospitality*, this is a commercial property policy and not a stand-alone business interruption policy. Cincinnati agreed to provide coverage for business income losses while insured property is being repaired, rebuilt or replaced because of tangible, physical alteration of property. Courts from coast to coast have recognized the unfortunate plight of businesses that were either shut down or have experienced declines in patronage as a result of efforts to keep people separated.[6] In granting a recent dismissal motion, the court pointedly stated, "[t]his Court's decision here is not a judgment on the Plaintiff's business sense or the wisdom of shuttering dining rooms in the face of a global pandemic. This decision merely reflects the plain language of the parties' insurance contract." *Henry's Louisiana Grill, Inc.*, 2020 WL 5938755 at *7. Cincinnati respectfully requests that this Honorable Court similarly enforce the clear terms of this property policy of insurance and dismiss this case.

> THE DEFENDANT,
> THE CINCINNATI INSURANCE
> COMPANY
>
> By: */s/Kathleen F. Adams, ct 28120*
>     Kathleen F. Adams
>     Litchfield Cavo, LLP
>     82 Hopmeadow Street, Suite 210
>     Simsbury, CT 06089
>     adamsk@litchfieldcavo.com

---

[6] "[A]s the Court sympathizes with Plaintiffs' situation, the Court determines that the motion to dismiss must be granted … ." *Diesel Barbershop, supra.* "While the Court is sympathetic to the plight of Plaintiffs, it must grant summary judgment to Defendants as a matter of law". *Rose's 1, LLC, supra.*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on December 18, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/Kathleen F. Adams, ct 28120*
Kathleen F. Adams
