UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FARMINGTON VILLAGE DENTAL ASSOCIATES, LLC | ) ) ) | |
| Plaintiff | ) ) | CASE No.:  3:20-CV-01647-VAB |
| V. | ) ) ) | |
| CINCINNATI INSURANCE COMPANY | ) ) ) | |
| Defendant | ) | JANUARY 28, 2021 |

### REPLY IN SUPPORT OF DEFENDANT THE CINCINNATI INSURANCE COMPANY'S MOTION TO DISMISS

Defendant, The Cincinnati Insurance Company ("Cincinnati"), respectfully submits this Reply in support of its Motion to Dismiss.

**I.      The Policy Requires Direct Physical Loss To Property And None Is Alleged Here**

**A.      The Plain And Ordinary Meaning Of Direct Physical Loss Requires Actual, Tangible, Physical, Structural Alteration Of Property**

Plaintiff argues that the Policy must afford coverage because it is an "all risk" policy and further contends that loss of use is covered under the Policy. (*See, e.g.,* Opp. Br., p. 3-4, 13-14, 18-20.) Plaintiff's position ignores the Policy's language, which requires direct ***physical*** loss or direct ***physical*** damage ***to covered property*** (emphasis added). Plaintiff also disregards governing law and the growing consensus of national authority. In its Motion to Dismiss, Cincinnati demonstrates that Connecticut authority, Second Circuit authority, and courts throughout the country, *as well as* Couch on Insurance, a widely recognized insurance treatise, make clear that direct physical loss or damage to property requires actual, tangible, physical, structural, etc., alteration of property. *See, e.g., City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 43 (2d Cir. 2003); *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 782 (2013) ("the escape of carbon monoxide,

without more, is not property damage"); *see also England v. Amica Mut. Ins. Co.,* 2017 WL 3996394, at *8 (D. Conn. Sept. 11, 2017)[1] ("in line with the Connecticut Supreme Court's reasoning, other courts have interpreted the term 'direct physical loss or damage' to 'strongly impl[y] that there was an initial satisfactory state that was changed into an unsatisfactory state'"); 10A Couch on Ins. § 148:46.[2]

Moreover, Connecticut jurisprudence is consistent with rulings from other courts located in the Second Circuit, as well as throughout the Northeast, that have recently held Coronavirus-related claims are not direct physical loss or damage to property that triggers coverage under property policies. *See, e.g., Tappo of Buffalo, LLC v. Erie Ins. Co.,* 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020); *10012 Holdings, Inc. d/b/a Guy Hepner v. Sentinel Insurance Company*, 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc., et al. v. Admiral Indemnity Company*, 2020 WL 7321405 (S.D.N.Y. Dec. 11, 2020); *Kessler Dental Assocs. P.C. v. Dentists Ins. Co.*, 2020 WL 7181057 (E.D. Pa. Dec. 7, 2020); *4431, Inc. v. Cincinnati Ins. Companies*, 2020 WL 7075318 (E.D. Pa. Dec. 3, 2020); V*erveine Corp. D/B/A Coppa, et al. v. Strathmore Ins. Co., et al.*, Case No. 2084CV01378-BLS2 (Mass. Sup. Ct. Dec. 21, 2020). These cases construe the Policy language at issue here and illustrate why this Court should grant the Motion to Dismiss.

Outside of the Coronavirus context, in *City of Burlington*, the Second Circuit discussed the meaning of direct physical loss or damage and found that covered property must be in an initial satisfactory state that is then changed into an unsatisfactory state. *City of Burlington*, 332 F.3d 38 at 44. In *City of Burlington*, the Second Circuit expressly held that there is no direct physical loss

---

[1] The unpublished decisions are attached hereto as **Exhibit 1** with an Index identifying each appended case.
[2] Plaintiff admits that the Policy is unambiguous, but also argues in favor of its reasonable expectations. (*See, e.g.,* Opp. Br., pp. 1, 10.) Connecticut law is clear that an insured's expectations cannot control over unambiguous policy language. *New London Cty. Mut. Ins. Co. v. Nantes*, 303 Conn. 737, 755 (2012). Plaintiff argues, in the alternative, that "physical loss" is ambiguous, but cites no on-point case law in support of its position. (Opp. Br., p. 10.)

2

or damage to property where a defective component has not yet failed and damaged covered property in a way that requires repair. *Id.*; *see also Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 412 (D. Conn. 2002) (discussed *infra*). This holding dovetails with the Policy's Period of Restoration provision, which limits business income coverage to the period of restoration and measures the period of restoration by the time required to repair, rebuild or replace covered property. (CIC Br., p. 23.) Where there is no actual, concrete, change in covered property, and thus, no required repair or period of restoration, there is no direct physical loss or damage. *See Accord*, *West Coast Hotel*, *Hillcrest*, *Henry's*, *Infinity*, *Sandy Point*, *Mudpie.* Like the foregoing cases, here there is no direct physical loss or damage to covered property, nor is there any required repair. Thus, there can be no coverage.

**B.       Dismissal Is Overwhelmingly Supported By A Tidal Wave Of Cases**

Plaintiff disingenuously claims Cincinnati relied on "several foreign COVID-related cases" in support of its position and contends cited cases construe distinguishable policy language. (Opp. Br., pp. 1, 27, 29.) Instead, Cincinnati's Motion to Dismiss addressed ***dozens*** of well-reasoned decisions construing policies that cover direct physical loss or direct physical damage. The cited decisions establish that this Policy language requires distinct, demonstrable, physical alteration of property and that there is no coverage for losses arising from Coronavirus-related suspension orders. (*See* CIC Br., pp.11-21.) Since the motion was filed, numerous other decisions have enforced this threshold requirement and granted insurers' motions to dismiss, finding similar claims do not constitute direct physical loss or damage. *See, e.g.*, *K D Unlimited, Inc. v. Owners Ins. Co.*, 2021 WL 81660 (N.D. Ga. Jan. 5, 2021) (collecting cases); *see also TJBC, Inc. v. The Cincinnati Insurance Company*, 2021 WL 243583 (S.D. Ill. Jan. 25, 2021); *Unmasked Management, Inc. et al. v. Century National Insurance Company*, 2021 WL 242979 (S.D. Cal. Jan.

22, 2021); *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc. & Nat'l Fire & Marine Ins. Co.*, 2021 WL 147139 (W.D. Pa. Jan. 15, 2021); *Adrian Moody v. The Hartford Fin. Grp., Inc.*, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021).[3] Courts throughout the country continue to reject arguments that financial loss from a "loss of use" of premises, absent actual physical change to the premises, constitutes direct physical loss to property under policy language identical or nearly identical to Cincinnati's.

Moreover, merely alleging the virus is on premises does not satisfy the direct physical loss requirement. For example, in *Unmasked*, the court holds:

> The Court agrees with Defendant that allegations showing the alleged presence of COVID-19 in or on the covered property are not sufficient to trigger coverage when direct physical loss of or damage to property is required. If, for example, a sick person walked into one of Plaintiffs' restaurants and left behind COVID-19 particulates on a countertop, it would strain credulity to say that the countertop was damaged or physically altered as a result. After all, disinfectant and other cleaning methods can be used to remove or lessen the virus from surfaces.

2021 WL 242979, at *6; *Mena Catering,* 2021 WL 86777 (mere presence of the virus is not direct

---

[3] *See ATCM Optical, Inc. v. Twin City Fire Ins. Co.*, 2021 WL 131282 (E.D. Pa. Jan. 14, 2021); *BA Lax, LLC v. Hartford Fire Ins. Co.*, 2021 WL 144248 (C.D. Cal. Jan. 12, 2021); *Berkseth-Rojas DDS v. Aspen Am. Ins. Co*., 2021 WL 101479 (N.D. Tex. Jan. 12, 2021); *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, 2021 WL 124416 (S.D. Fla. Jan. 12, 2021); *Clear Hearing Solutions, LLC v. Cont'l Cas. Co.*, 2021 WL 131283 (E.D. Pa. Jan. 14, 2021); *Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co. Ltd.*, 2021 WL 80535 (S.D. Fla. Jan. 8, 2021); *Independence Rest. Grp. v. Certain Underwriters at Lloyd's, London*, 2021 WL 131339 (E.D. Pa. Jan. 14, 2021); *Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.,* 2021 WL 117898 (S.D. Fla. Jan. 11, 2021); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 2021 WL 141180 (N.D. Cal. Jan. 13, 2021); *Mena Catering, Inc. v. Scottsdale Ins. Co.*, 2021 WL 86777 (S.D. Fla. Jan. 11, 2021); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, 2021 WL 105772 (N.D. Cal. Jan. 12, 2021); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021); *TAQ Willow Grove, LLC v. Twin City Ins.*, 2021 WL 131555 (E.D. Pa. Jan. 14, 2021); *Ultimate Hearing Solutions II, LLC v. Twin City Fire Ins. Co.*, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021); *Zagefen Bala, LLC v. Twin City Fire Ins. Co.*, 2021 WL 131657 (E.D. Pa. Jan. 14, 2021); *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, 2021 WL 42050 (S.D. W. Va. Jan. 5, 2021); *Roy H. Johnson, DDS v. The Hartford Fin. Svcs. Grp., Inc.*, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021); *Palmdale Estate, Inc. v. Blackboard Ins. Co.*, 2021 WL 25048 (N.D. Cal. Jan. 4, 2021); *Steven Baker & Melania Kang d/b/a Chloe's Café v. Ore. Mut. Ins. Co.*, 2021 WL 24841 (N.D. Cal. Jan. 4, 2021); *Edison Kennedy, LLC v. Scottsdale Ins. Co.*, 2021 WL 22314 (M.D. Fla. Jan. 4, 2021); *Drama Camp Productions, Inc., et al. v. Mt. Hawley Insurance Company*, 2020 WL 8018579 (S.D. Al. Dec. 30, 2020); *Jonathan Oheb MD, Inc. v. Travelers Casualty Insurance Company*, 2020 WL 7769880 (C.D. Ca. Dec. 30, 2020); *Tappo of Buffalo, LLC v. Erie Ins. Co.*, 2020 WL 7867553 (W.D.N.Y. Dec. 29, 2020); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020).

physical loss); *K D Unlimited Inc. v. Owners Ins. Co.*, at *5 (same). Similarly, *Promotional Headwear* also found that mere **presence of the virus on property does not constitute direct physical loss or damage to property**. *Id*. at *8. *See Uncork and Create LLC*, 2020 WL 6436948, *5; *Zwillo V, Corp.*, 2020 WL 7137110, at *4; *see also Sandy Point Dental*; *Bluegrass*; *Johnson*; *Tappo; Uncork; Pappy's*.

## II.   Plaintiff's Deconstruction Argument Fails

Plaintiff argues that because the Policy defines loss as physical loss or physical damage, this somehow means that there is coverage for purely financial losses in the absence of a physical alteration to property. (*See* Opp. Br., pp. 11-12.) In essence, Plaintiff claims "or" means either but never both. Plaintiff's theory flies in the face of established Connecticut authority. *See, e.g., R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.*, 171 Conn. App. 61, 281 (2017), *aff'd*, 333 Conn. 343 (2019) (holding insurance policy language containing the term "or" to be conjunctive; recognizing that Connecticut Appellate and Supreme Courts have found "or" may "be understood in the conjunctive rather than disjunctive sense"; *D'Occhio v. Connecticut Real Estate Comm'n*, 189 Conn. 162, 170 (1983) ("it is clear that the legislature used the word 'or' in the phrase in question in a conjunctive sense"). Moreover, the Policy defines "Loss" as "accidental physical loss or accidental physical damage." The word "physical" is integral to all aspects of this phrase.

Plaintiff's "disjunctive or" argument has also been rejected in numerous recent Coronavirus coverage cases. *See, e.g.*, *Promotional Headwear*, 2020 WL 7078735 at *7 (rejecting an identical argument about identical policy language and finding that "the words 'direct' and 'physical' modify *both* 'loss' and 'damage' under the Policy" which requires more than diminution in value for coverage). In *Real Hospitality*, 2020 WL 6503405 *5, the plaintiff posited that the disjunctive "or" denotes a choice between alternatives. Plaintiff focused on the first alternative for

5

"direct physical loss of," arguing that it does not require a tangible damage or alteration to property. The court squarely rejected this argument: "When all of the provisions are read together it makes logical sense that the property that is insured, *i.e.*, the building and/or personal property in or on the building, must first be lost or damaged before Business Income coverage kicks in." *Id*. at *6. *See also Hillcrest Optical*, 2020 WL 6163142 at *4; *10E*, 2020 WL 5359653 at *5; *Plan Check*, 2020 WL 5742712 at *4; *Malube, 10E, Henry's Louisiana Grill, Pappy's Barbershop*.

### III. Plaintiff's Theories Are Contrary To Connecticut Law And The Cases On Which Plaintiff Relies

Plaintiff cites a number of distinguishable cases to contend that "direct physical loss" does not require physical or structural alteration. (*See* Opp. Br., pp. 16-21.) First, certain cases cited by Plaintiff actually advance Cincinnati's argument because there was physical harm or alteration. For example, in *Yale Univ. v. Cigna Ins. Co.*, 224 F. Supp. 2d 402, 412 (D. Conn. 2002), the court construed a policy providing coverage for direct physical loss or damage to property and found:

> There is little doubt that Yale ***could not properly seek coverage under the all risk policies for costs incurred due to the mere presence*** of asbestos-and lead-containing materials in its buildings. *See Great Northern Ins. Co. v. Benjamin Franklin Federal Savings & Loan Assoc.*, 793 F.Supp. 259 (D.Or.1990); *Pirie v. Federal Ins. Co.*, 45 Mass.App.Ct. 907, 696 N.E.2d 553 (1998); *Leafland Group–II v. Ins. Co. of North Amer.*, 118 N.M. 281, 881 P.2d 26 (1994) (diminution in value of property due to presence of asbestos was not fortuitous "direct loss"); . . .

*Id.* (emphasis added). In concluding the claim triggered coverage, the court found that the insured specifically asserted physical harm to its property due to the presence of friable asbestos and non-intact lead-based paint. *See id.* at 409 ("In fact, Yale's own summary of the amounts it incurred to remediate lead hazards demonstrates that the ***costs it incurred were solely to remediate harm to its own property.***"; Yale claimed remediation costs "to '[r]eplace windows,' '[r]eplace trim,' '[s]trip and repaint trim,' '[s]trip and repaint doors,'"). Thus, in *Yale*, there was evidence of

physical harm to property that required repair. By contrast, Plaintiff fails to allege any physical harm here or required repair. Similarly, in *First Presbyterian*, gasoline had permanently infiltrated the soil under the property and its fumes were permanently present in the structure. *Western Fire Insurance Co. v. First Presbyterian Church*, 437 P.2d 52, 54 (Colo. 1968); *see Sentinel Mgmt. Co. v. New Hampshire Ins. Co.,* 563 N.W.2d 296 (Minn. Ct. App. 1997) (deterioration of asbestos-containing materials was held to be a form of physical alteration of the building/property); *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002) (asbestos).[4]

Next, Plaintiff relies on a number of cases that construe materially different policy language and/or rely on irrelevant legal principles. *See, e.g., Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am*., 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010) (applying unique provision of Virginia law); *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823, 825 (3d Cir. 2005) (finding genuine issue of material fact; policy included coverage for *risk* of direct physical loss; here, there must be an actual physical loss); *Am. Guarantee & Liab. Ins. Co. v. Ingram Micro, Inc*., 2000 WL 726789, at *3 (D. Ariz. Apr. 18, 2000) (relying on penal statutes to construe policy provisions regarding claim seeking coverage for an inoperable computer).[5]

---

[4] *See also Murray v. State Farm Fire & Cas. Co*., 203 W. Va. 477, 493, 509 S.E.2d 1, 4 (1998) (there was physical damage as the "policyholders' homes were damaged by rocks falling from the highwall of a 40–year old abandoned rock quarry situated next to the homes" and the homes were abandoned, as well as completely unusable); *Assurance Co. of Am. v. BBB Serv. Co.*, 265 Ga. App. 35, 35, 593 S.E.2d 7, 7 (2003) (evacuation orders issued in response to hurricane damaged other property). *Murray* was held inapplicable in recent Coronavirus coverage cases. *Uncork*; *Bluegrass*.

[5] Plaintiff also relies on various irrelevant decisions that have been vacated or abrogated, such as *U.S. Airways* and *Hughes*. (Opp. Br., pp 18-19.) Plaintiff cites to *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.,* 2018 WL 3829767, at *3 (C.D. Cal.). (Opp., p. 18.) However, Coronavirus coverage cases properly and consistently reject *Total Intermodal. See, e.g., Pappy's Barber Shops, Inc.*, 2020 WL 5500221, at *5, *citing 10E,* 2020 WL 5359653, at *4–5 ("Plaintiffs make similar arguments for coverage under identical policy language and also rely on *Total Intermodal* to support their position. For all the same reasons, Plaintiffs have failed to plausibly allege any entitlement to coverage under the business income or extra expense provisions in their Policy."); *see also Jonathan Oheb MD, Inc.*, 2020 WL 7769880, at *3.

Plaintiff further cites to wrongly decided cases from the Western District of Missouri. *Studio 417, Inc., et al. v. The Cincinnati Ins. Co.,* 2020 WL 4692385 (Aug. 12, 2020); *K.C. Hopps, LTD v. The Cincinnati Ins. Co., Inc.*, Case No. 20-cv-00437-SRB (W.D. Mo. Aug. 12, 2020) (*K.C. Hopps* adopted the *Studio 417* opinion. Together, "*Studio 417*")).)[6]. (Opp. Br., pp. 16, 30.) *Studio 417* erroneously accepts legal conclusions and other unsupported conclusions as if they were facts. *See, e.g., id.* at *4. *Studio 417* also incorrectly interprets Missouri law: *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.,* 787 F.2d 349 (8th Cir. 1986) and *Mehl v. The Travelers Home & Marine Ins. Co.,* Case No. 16-CV-1325-CDP (E.D. Mo. May 2, 2018). In *Hampton Foods*, there was a physical alteration to property and thus direct physical loss. 787 F.2d at 352. In *Mehl*, the policy expressly supplied coverage for a "loss of use" of property, and thus did not require direct physical loss. *Mehl*, Case No. 16-CV-1325-CDP.

Furthermore, *Studio 417* contradicts a substantial number of well-reasoned decisions from around the nation, including, for example, *Promotional Headwear*, *Uncork and Create*, *Oral Surgeons*, *TJBC, Inc.*, *Riverside Dental*, *Bend Hotel Development*, *Catlin Dental*, *Webb Dental*, *T&E Chicago, 4431, Inc.* and *Sandy Point*, all of which were decided after *Studio 417* and expressly grant Cincinnati's motions to dismiss over oppositions that relied on *Studio 417*. Cincinnati respectfully submits that the Coronavirus decisions Plaintiff relies upon, including *Studio 417*, are outlier decisions that should be ignored. *Kirsch v. Aspen Am. Ins. Co.*, 2020 WL 7338570, *6 n.2 (E.D. Mich. Dec. 14, 2020) (finding *Studio 417* is a minority view); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 2020 WL 7351246, *6 n.9 (W.D. Tex. Dec. 14, 2020) (describing *Studio 417* and *K.C. Hopps* as "outlier rulings"); *Zwillo*, 2020 WL 7137110, at *8

---

[6] *Studio 417, K.C. Hopps,* and *Blue Springs Dental Care* were decided by the same judge and rely on the same faulty reasoning.

(judge in Western District of Missouri expressly disagreeing with *Studio 417*). Moreover, *Studio 417*, for all of its flaws, ***expressly indicated that its determination that the virus and/or the orders may cause direct physical loss might need to change as additional authorities develop.*** *Id.* at *8. With near unanimity, courts throughout the country have rejected *Studio 417*'s holding. *Zwillo* is an especially powerful rebuke of *Studio 417* because *Zwillo* was also issued by a judge in the Western District of Missouri, applying Missouri law. *Zwillo*, 2020 WL 7137110, at *8.

Plaintiff also erroneously relies on *North State Deli, LLC v. The Cincinnati Ins. Co*. (Opp. Br., p. 14.) There, the North Carolina trial court rushed to judgment and granted a partial summary judgment motion ***before*** Cincinnati answered the Complaint or asserted affirmative defenses. The order also includes language providing that the decision is immediately appealable. Cincinnati has since appealed. Moreover, *North State Deli* ignores well-established North Carolina law. In *Harry's Cadillac–Pontiac–GMC Truck Co., Inc. v. Motors Insurance Corp. et. al.,* 486 S.E.2d 249 (N.C. Ct. App. 1997), the issue on appeal was whether plaintiff's alleged lost profits due to a snowstorm, causing its dealership to be inaccessible for a week, were covered under a commercial property policy's business interruption coverage. In concluding there was no coverage, the appellate court stated:

> [W]e hold that the business interruption clause is not applicable to the facts in this case. Plaintiff neither alleged nor offered proof that its lost business income was due to damage to or the destruction of the property, rather all the evidence shows that the loss was proximately caused by plaintiff's inability to access the dealership due to the snowstorm…We hold that, under the language of the business interruption clause of the policy, coverage is provided only when loss results from suspension of operations due to damage to, or destruction of, the business property by reason of a peril insured against.

*Id.* at 251-52. That *North State Deli* makes no mention of *Harry's Cadillac*, a binding authority from its own appellate court, makes it an isolated decision that is contrary to binding North Carolina authority and not persuasive here.

### IV.  The Civil Authority Coverage Does Not Apply

Plaintiff also relies on *Studio 417* to argue that the Policy's Civil Authority coverage is potentially available. (*See* Opp. Br., pp. 37-38.) Despite language requiring that access must be prohibited, *Studio 417* held that it was sufficient to allege that access was restricted to some degree. *Studio 417*, 2020 WL 4692385. Numerous courts across the country have reached the exact opposite conclusion as *Studio 417*. These courts have held that orders such as the ones issued in Connecticut addressing the Coronavirus pandemic do not prohibit access to the insured premises. *See e.g., Sandy Point*, 2020 WL 5630465, *3; *see also SA Palm Beach LLC*, 2020 WL 7251643, **5-6; *El Novillo Rest.*, 2020 WL 7251362, *6-7; *Palmer Holdings & Investments, Inc*, 2020 WL 7258857, **11-12; *Kessler Dental Assocs.,* 2020 WL 7181057, *4; *Hillcrest,* 2020 WL 6163142 at **5-7. The orders, in fact, specifically allow insureds, such as the Plaintiff, to continue to access the premises for basic operations and to provide certain dental services. This does not satisfy the prohibition requirement. Thus, the Civil Authority coverage is not available.

### CONCLUSION

Plaintiff's commercial **property policy** provides coverage for physical loss or physical damage **to covered property**. It simply does not provide coverage for the purely economic loss allegedly suffered by Plaintiff. Thus, for the reasons stated here and in Cincinnati's initial Memorandum, Cincinnati's Motion should be granted in all respects.

THE DEFENDANT,
THE CINCINNATI INSURANCE
COMPANY

By: */s/Kathleen F. Adams, ct 28120*
Kathleen F. Adams
Litchfield Cavo, LLP
82 Hopmeadow Street, Suite 210
Simsbury, CT 06089
adamsk@litchfieldcavo.com

## CERTIFICATION OF SERVICE

I hereby certify that on January 28, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/Kathleen F. Adams, ct 28120*
Kathleen F. Adams